UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF ECORSE,

    Plaintiff/Counter-Defendant,        Case No. 07-12131

v.        Honorable John Corbett O'Meara

UNITED STATES STEEL,

    Defendant/Counter-Plaintiff.
                                     /

**OPINION AND ORDER GRANTING U.S. STEEL'S NOVEMBER 11, 2008
MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM**

    This matter came before the court on U.S. Steel's November 11, 2008 motion for summary judgment on its counterclaim. The City of Ecorse filed a response December 2, 2008; and U.S. Steel filed a reply December 11, 2008. Oral argument was heard February 19, 2009.

**BACKGROUND FACTS**

    Since 2003, U.S. Steel has maintained steel-making facilities in Ecorse, Michigan, at a site called the Great Lakes Works ("GLW"). GLW was formerly owned by National Steel Corporation since the 1920's. National sought bankruptcy protection in 2002; and U.S. Steel purchased certain National assets from the bankruptcy trustee on May 20, 2003.

    U.S. Steel purchases water for GLW from the City of Ecorse, which in turn purchases water from the City of Detroit. Water usage is measured by water meters contained in water meter pits. Three Ecorse water lines exist in the area of the GLW.

    In 2005 the City of Ecorse decided to replace the meters servicing these three lines and the water meter pits in which the meters are located. Ecorse had preliminary discussions with U.S. Steel

about the cost of this work; however, the parties were unable to work out an agreement. Ultimately, Ecorse advertised for and received bids for the replacement project.

The Ecorse City Council accepted a bid from DeAngelis Landscaping on August 30, 2005, in the amount of $524,925.00. They called the project the "U.S. Steel Water Meter Pits and Replacement." On September 19, 2005, having learned of the approval of a contract for the work, counsel for U.S. Steel wrote to Andrew G. Robertson, III, the Ecorse city attorney at the time, indicating that it was aware of no basis for the construction of new water meter pits. The letter also stated that U.S. Steel knew of no legal authority for Ecorse to charge U.S. Steel for the cost of the project and that therefore U.S. Steel did not believe it was obligated to reimburse the City for such cost if the City decided to proceed.

The City of Ecorse did not respond to the letter; instead, it went ahead with the project. In July 2006, Ecorse presented U.S. Steel with invoices dated July 19, 2006, for the "Westfield Rd. Meter Pit," the "Visger Road Meter Pit," and the "Glenwood Avenue Meter Pit," in the amounts of $250,521.02; $195,590.00; and $160,511.35, respectively. The three total $606,622.37.

On August 10, 2006, GLW's general manager wrote to Ecorse asking for an explanation of Ecorse's position that U.S. Steel was responsible for the invoices and pointing out, among other things, that the Glenwood Avenue meter pit does not service GLW. Brunetta Brandy, Ecorse's city attorney at the time, responded on September 29, 2006, explaining Ecorse's position that U.S. Steel was responsible for the invoices.

Counsel for U.S. Steel responded to the City's letter on October 11, 2006, disputing the City's position but offering to meet with City officials to discuss the matter. No response was sent, and no meeting took place.

In April 2007, the City of Ecorse filed an unrelated action against U.S. Steel in state court, seeking to recover building permit and maintenance fees it claims were unpaid. U.S. Steel removed the matter to this court in May 2007, and filed a counterclaim, asking this court for a declaratory judgment holding that U.S. Steel is not responsible for the costs of the new meter pits.

## **LAW AND ANALYSIS**

Pursuant to Section 23-29(f) of the Ecorse City Code:

> The expense of installing and maintaining meters will be borne by the water department; provided, however, that where replacements, repairs, or adjustments of a meter are made necessary by the act, negligence or carelessness of the owner or occupant of the premises, the expense to the department caused thereby shall be charged and collected from the owner of the premises.

Plaintiff's Ex. H at 1263.

Under the plain language and meaning of this section, the cost of installing and replacing water meters ordinarily is that of the City of Ecorse. However, the owner of property can be charged for replacements, repairs or adjustments of a meter necessitated by its own "act, negligence or carelessness." Nowhere in its pleadings does Ecorse allege that any acts, negligence or carelessness of U.S. Steel necessitated the extensive work in question. In its response brief, the City of Ecorse does acknowledge that the new pits and meters will make the City's job easier and more convenient, as it will no longer have to get U.S. Steel's permission to enter its land in order to read the water meters.

The City has also asserted that entering the old pits to read the meters at GLW was both dangerous and time-consuming. The City has complained that the old meters had become outdated because they could not be read electronically; therefore, they could not be classified as "state of the art." Robillard dep. at 82-83. However, the City has no evidence to show that the meters were not

working properly. More importantly, it has presented no evidence to show that the replacement of the meters and the pits was *necessitated* by any act, negligence or carelessness of U.S. Steel.

Ecorse asserts that U.S. Steel should be charged for the meters because the meters are larger than the usual five-eights inch meters. The City of Ecorse Code provides the following:

> The water department will furnish, without additional charge, a five-eights inch water meter with each service connection. Where a larger meter is requested, the engineer shall determine whether a meter of such size is needed, and the customer shall pay the total cost of the meter which shall be furnished by the department.

Plaintiff's Ex. H at 1261-62.

There is no dispute that the new meters installed at GLW are somewhat larger than five-eights inch. Thus, the City contends that U.S. Steel has total responsibility not only for the original installation but also for all maintenance of that meter and the cost of replacing the meter, even if, as in this case, there is no evidence that the existing meter was not working properly.

However, the ordinance speaks to oversized meters "requested" by the customer. The City argues that it need not be the customer who requests the oversized meter because the ordinance does not specify who requested it. The only logical reading of the ordinance, however, would indicate that such a request must be made by the customer, not the City.

Furthermore, U.S. Steel did not own the property in the 1980's when the meters were last replaced. It did not request that the new meters be larger than five-eights inch because it did not request the new meters at all. There is nothing in the City code to support the notion that the City may replace the meters at any time, for any reason, and charge a subsequent property owner, which had not made a request for larger meters, for the cost of making that replacement.

Based on a plain reading of the Ecorse City Code, U.S. Steel is entitled to summary judgment on its counterclaim.

## ORDER

It is hereby **ORDERED** that U.S. Steel's November 11, 2008 motion for summary judgment on its counterclaim is **GRANTED.**

                                        s/John Corbett O'Meara
                                        United States District Judge

Date: February 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 23, 2009, by electronic and/or ordinary mail.

                                        s/William Barkholz
                                        Case Manager